Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr., Judge

```
HENRY OSEGUERA,                  )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )     NO. C 16-05706 HSG
                                 )
EXPERIAN INFORMATION             )
SOLUTIONS, INC., and             )
SPECIALIZED LOAN SERVICING,      )
LLC,                             )
                                 )
            Defendants.          )
_____  )
```

San Francisco, California
Thursday, January 26, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

              SAGARIA LAW PC
              2033 Gateway Place - 5th Floor
              San Jose, California  95110
      **BY:  ELLIOT W. GALE, ATTORNEY AT LAW**

For Defendant Experian Information Solutions, Inc.:
              JONES DAY
              555 California Street - 26th Floor
              San Francisco, California  94104
      **BY:  DAVID L. WALLACH, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

1   **APPEARANCES**:   (CONTINUED)

2   For Defendant Specialized Loan Servicing, LLC:
3                THE RYAN FIRM
                30 Corporate Park - Suite 310
                Irvine, California  92606
4            BY:  **TADEUSZ MCMAHON, ATTORNEY AT LAW**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**Thursday - January 26, 2017**</u>                      <u>**2:01 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

**---000---**

**THE CLERK:**  We're calling C 16-5706, Oseguera versus Experian Information Solutions, Inc. et al.

Please step forward and state your appearances for the record, please.

**MR. GALE:**  Good afternoon, Your Honor.  Elliot Gale, Sagaria Law, for the plaintiff.

**THE COURT:**  Good afternoon, Mr. Gale.

**MR. WALLACH:**  Good afternoon, Your Honor.  David Wallach for Experian.

**THE COURT:**  Good afternoon, Mr. Wallach.

**MR. McMAHON:**  Good afternoon, Your Honor.  Tad McMahon for Specialized Loan Servicing.

**THE COURT:**  Good afternoon, Mr. McMahon.

All right.  So we're here for a hearing on the defendants' motions to dismiss.  I've reviewed the papers.  Obviously there are a number of similar, if not identical, cases pending in the district.  So I've read a number of those decisions as well.

I guess the first question for Mr. Gale is:  Has any court in this district accepted the arguments that you're making here?

**MR. GALE:**  Not in the sense that Your Honor is thinking, no.  The legal issue specifically with respect to

1  reporting a past due balance postconfirmation was before

2  Judge Freeman in *In Re Moses*.  Her order doesn't, I think, get

3  to sort of the legal merits, which is why we've not cited it in

4  our briefing thus far.

5          THE COURT:  What was the basis for Judge Freeman's

6  decision in *Moses*?

7          MR. GALE:  It's a brief order, but her rationale was

8  basically that she needed more facts, and I'm being very

9  cursory in that, but that was the thrust.

10      I would also -- and I do appreciate Your Honor asking me

11  the question.  I haven't -- at these hearings, there hasn't

12  been too much interaction with the Court, so I do appreciate

13  that.

14      The briefing thus far -- because a lot of these orders

15  have occurred postbriefing, there are new legal issues that I

16  think have risen that I just discussed for the first time

17  yesterday in front of Judge Orrick.  Being blunt, I don't think

18  that I changed his mind, but those issues have not been briefed

19  here.  I have briefed them for Judge Cousins and Judge Rogers.

20          THE COURT:  What are those issues?

21          MR. GALE:  So in terms of, I think, where the case law

22  is with respect to these cases, they're all right now

23  foundationally on Judge Koh's order in *Jaras* and *Devincenzi*.

24  In those opinions she places great weight on *In Re Elliott*,

25  which I think it's out of the Seventh Circuit, and specifically

1  the language that she is citing in that case is that

2  confirmation only adjudicates the manner in which the debtor

3  will discharge his financial obligations.

4      Specifically, the language in *Elliott* essentially says

5  confirmation doesn't confirm debts.  And from that rule of law,

6  she has extrapolated the idea that to the extent confirmation

7  is *res judicata*, even if it is, it wouldn't have the same

8  impact or it wouldn't have the impact on credit reports that

9  would require a data furnisher to update the reporting.

10      In response to that opinion, I have written a 16-page

11  brief that outlines what I perceive to be fundamental

12  misunderstandings of what was actually transpiring in *Elliott*,

13  and specifically the issues in the bankruptcy world when you're

14  talking about debts versus claims.

15      The Bankruptcy Code is very, very specific and clear when

16  you're talking about debts and claims, and it defines them

17  both.

18      11 U.S.C. 101(5) defines "claim" as a right to a payment.

19  11 U.S.C. 101(12) defines "debt" as liability on a claim.  In

20  other words, when you're talking about debts and claims in the

21  bankruptcy context, when you're talking about a claim, you're

22  really talking about prelitigation or the idea that a data

23  furnisher or a creditor believes that they have a valid

24  contract.

25      If you read *Elliott*, the issue before the Court in

1  *Elliott*, there was a debtor who filed bankruptcy, Chapter 13.

2  The plan was ultimately confirmed, which included the first

3  mortgage.

4       **THE COURT:**  And here everyone agrees we're

5  postconfirmation but predischarge; correct?

6       **MR. GALE:**  Absolutely, Your Honor.  Correct.

7       So in *Elliott*, the Chapter 13 was eventually dismissed and

8  later the debtor filed a state court cause of action under

9  TELA.

10       In response, the lender says, *No, no, no.  You can't file*

11  *this TELA cause of action because you've already filed a*

12  *Chapter 13.  We filed a proof of claim and you never objected*

13  *to the proof of claim; ergo, you're judicially estopped because*

14  *that issue is res judicata.*

15       In looking at that issue, what the Court in *Elliott* said

16  was, *Respectfully, ITT, you're wrong.  All confirmation does is*

17  *confirm the manner in which you're going to discharge the debt.*

18  In other words, you don't confirm debts; but when it uses the

19  word "debt" there, what it means is you actually haven't

20  litigated the underlying claim.

21       This becomes extremely important in the Chapter 13 context

22  because our entire legal premise is that 1322(b)(2) modifies

23  claims.  It doesn't modify debts.

24       And if you read the language in *Elliott*, the court

25  essentially said that requiring -- well, I'll just quote it

1  (reading):

2          "Moreover, because Chapter 13 is a voluntary

3      proceeding designed to expeditiously develop a plan for

4      putting a debtor's fiscal house in order, there is little

5      time for a debtor to thoroughly explore possible

6      challenges to his underlying debts.  Because requiring

7      full investigation and disclosure of possible claims would

8      defeat the summary nature of Chapter 13, it would be

9      inconsistent and inappropriate to give confirmation of a

10      plan *res judicata* effect with respect to the underlying

11      claims."

12          The way I -- as a bankruptcy practitioner, Your Honor, the

13  way I tried to explain the interaction between "claims" and

14  "debts" is with a hypothetical.  The hypothetical would be

15  something where a debtor receives $10,000 from a creditor prior

16  to filing.  The creditor thereafter starts reporting a balance

17  on a credit report of $10,000.  Debtor files bankruptcy.  Upon

18  receiving notice, the creditor starts reporting -- I'm sorry --

19  the lender files a proof of claim for $10,000 because that was

20  the money that was received.

21          The creditor doesn't know, however, that the debtor

22  doesn't believe it was a loan.  It was actually a gift.  So at

23  this point in the Chapter 13 process, there is a dispute

24  regarding whether or not the $10,000 is valid; but at this

25  point all it is is a claim.  It's not actually a debt.

1    Once the claim is confirmed, if the debtor proposed a

2  10 percent plan, under 1322(b)(2), the debtor is allowed to

3  modify the claim.  This is extremely important because what

4  Congress has intended is that debtors when filing Chapter 13

5  are not required to actually litigate the validity of the

6  claim.  They can modify it prelitigation.

7    So in my hypothetical, what you can do is you can take

8  that $10,000 claim and actually lower it.  In my example, I'm

9  saying 10 percent.  Postconfirmation in that example we would

10  expect to see the balance reflect $1,000.

11    Now, what *Elliott* says is that postconfirmation, even

12  though you've already lowered the claim, you can actually go

13  and object to that claim and make it zero.  That is a very pro

14  debtor concept that I think, respectfully, Judge Koh missed in

15  *Elliott* because *Elliott* is rather than sort of diminishing a

16  debtor's right to modify claims, it actually expands that

17  right.

18    And, in fact, it's not in our brief because this all came

19  up afterwards, but the Eleventh Circuit actually holds the

20  exact opposite, which is that confirmation actually eviscerates

21  the right to object to a claim postconfirmation.

22    As debtors' counsel, frankly, I disagree with that, but at

23  least in this context it is a completely 180-degree difference

24  between the way Judge Koh is reading *Elliott*.

25    In the Ninth Circuit, Your Honor, 1322(b)(2), which

1    specifically allows a debtor to modify a claim in conjunction

2    with 1327, which is the effect of confirmation -- so you have

3    1322 that's modifying claims and then you have 1327 that

4    actually says, *Okay, those terms are binding* -- in the

5    Ninth Circuit, this arrangement is a new contract.  That is the

6    law.  That's *In Re Than*.  Ninth Circuit back --

7               **THE COURT:**  Well, did you cite *Than* in your papers?

8               **MR. GALE:**  This all came up afterwards, Your Honor.

9    No.

10              **THE COURT:**  It came up after what?  These cases have

11   only been decided since you filed your brief?

12              **MR. GALE:**  No.  I'm sorry, Your Honor.  No.  I

13   misspoke.

14       The thrust of our briefing up to this point has been on

15   1327, and that is a mistake on our part because there was an

16   assumption made that if 1327 says the terms are binding, I

17   wrongly assumed that 1322 would just be analyzed.  It wasn't.

18   That's my fault, and I admit that, Your Honor.

19              **THE COURT:**  All right.  Well, we can't have a

20   productive argument at this point on arguments you haven't

21   raised.

22              **MR. GALE:**  Well, 1322 is in the briefing, Your Honor.

23   It is in the briefing but not to the extent that I'm talking

24   about it here.  We cite to a few cases, but the part -- the

25   integral part that's missing in the briefing is the vast

1   majority of case law in the Ninth Circuit that says 1322 plus

2   1327 equals a new contract.

3        **THE COURT:**  All right.  But you take my point; right?

4   I read the brief that you submitted.  I read the brief that the

5   other side submitted.  Now is not really the time for that to

6   be supplemented with an argument that they haven't even had the

7   chance to review.

8        **MR. GALE:**  But the only -- the only reason this has

9   come up, Your Honor, is because of the opinions as they're --

10  as opinions are being written, on my end we are trying to

11  address things that I didn't even know were issues.

12       For example, the biggest -- the biggest issue is the word

13  "debt" in *Elliott*.  If *Elliott* is read with the definition that

14  I am giving "debt" that is backed up by statute, the entire

15  meaning of that opinion changes.  And if that -- if the entire

16  opinion changes, then that means that the entire opinion of

17  *Jaras* and *Devincenzi* falls away because you do not adjudicate

18  claims at confirmation.

19       And, respectfully, data furnishers do not report debts as

20  they are defined by the Bankruptcy Code.  If this Court has

21  any -- if this Court were to pull its own credit report, the

22  things that it would see would not be adjudicated claims.  It's

23  essentially a creditor's belief in an underlying valid

24  contract, but most -- millions of consumers throughout the

25  country, Your Honor, when they pull their credit reports, the

1  balances, the past due balances, the late payments, everything

2  that is reported typically is prelitigation.

3      Now, obviously, you can --

4      **THE COURT:**  When you say "litigation," what do you

5  mean?

6      **MR. GALE:**  I mean when you look specifically at the

7  definition of "debt" under the Bankruptcy Code, it says

8  "liability on a claim."  In other words, there has been an

9  adjudication with respect to that claim, meaning that in my

10  example, if there was a dispute -- and you can -- and all of

11  this, by the way, is done under 11 U.S.C. 502(b), which is the

12  objection to claim process, which is a whole other body of law.

13      But what I'm saying is that if you look at the definition

14  of "debt," because it is liability on a claim and a claim is a

15  right to a payment, I'm saying before something becomes a debt,

16  you actually have to have some sort of a judgment in place with

17  respect to the way the Bankruptcy Code defines it.

18      I understand that if you asked John Q. Public what gets

19  reported on your credit report, the answer is going to be debt,

20  and I don't make any representations otherwise; but what I'm

21  saying is that you have to look at congressional intent.

22      The title of Chapter 13 is "Adjustment of Debts."  So that

23  means when Congress -- and Congress has specifically defined

24  the difference between "debt" and a "claim."  So if Congress in

25  the title of Chapter 13 is using the word "debt" and then later

1    in the statute uses the word "claim," then by operation of

2    statutory construction Congress must think that if you're

3    modifying a claim, you are, in fact, modifying a debt.

4         And my point here is, Your Honor, that data furnishers do

5    not report debts.  They report claims as they're defined by the

6    Code.  So if you can modify a claim, then you would expect to

7    see that updated on a credit report.

8         Peripherally --

9              **THE COURT:**  Let me just ask.  Just as a matter of

10   pleading, though, as I read it, just you've, in paragraphs 87

11   through 101, essentially pled that some of the lines were

12   inaccurate but you don't say which were.  You say some accounts

13   failed to register the plaintiff was making payments on the

14   account through plaintiff's Chapter 13 plan.  Paragraph 95, the

15   account was not reporting the bankruptcy accurately or, worse,

16   not at all.

17        Why is that not just a *Twombly* failing?  In other words,

18   which accounts?  How do we trace that to this particular

19   defendant setting aside even the legal question?

20             **MR. GALE:**  I see Your Honor's points.  That would be a

21   simple fix.

22        We are at the 12(b)(6) stage, which I think it's a

23   reasonable inference that later in paragraph 99, because the

24   complaint says seven trade lines were disputed but there's only

25   one defendant, the reasonable inference is that the defendant

 1   listed was one of the seven trade lines disputed; and, frankly,

 2   the only reason that there's one defendant and not seven is

 3   because the other six fixed the trade line.

 4          **THE COURT:**  All right.  Let me -- would you agree that

 5   under these circumstances, the actual reports are incorporated

 6   by reference in the complaint such that I ought to be able to

 7   look at them?

 8          **MR. GALE:**  Yes, and I actually brought a copy if

 9   Your Honor wants to look at the --

10          **THE COURT:**  It's not in the record right now, but --

11          **MR. GALE:**  I just didn't know for purposes of just

12   visualizing sort of what I am -- but I understand.

13          **THE COURT:**  All right.  Let me hear from Experian's

14   counsel.

15          **MR. WALLACH:**  Thank you, Your Honor.

16      To go back to where this started, I agree with Mr. Gale

17   that there is no case in this district accepting the

18   plaintiff's theory.  I'm not aware of a case anywhere in --

19   anywhere accepting this claim under the FCRA.

20      With respect to the argument that plaintiff's counsel just

21   made about debts versus claims, I agree with Your Honor, the

22   issue was not raised in the briefs and so it's not properly

23   before the Court.

24      However, I did hear this argument for the first time

25   yesterday when we were appearing on a similar motion in front

1    of Judge Orrick, and so I went back and did a little bit of

2    research into it.

3        The point that plaintiff's counsel is making is based on

4    11 U.S.C. 101, and specifically he construes Section 10 of that

5    statute, which defines "debt" to mean "liability on a claim,"

6    to mean that a debt only exists after a judgment is entered.

7        And there's no support for that.  There's no case law

8    supporting that.  Judgments are not the only types of

9    liabilities that exist.  If that's what it meant, it would say

10   "a judgment on a claim."

11       And the Supreme Court, not addressing this issue in this

12   context, but did address the meaning of that particular

13   definition, and this is *Pennsylvania Department of Public*

14   *Welfare v. Davenport*, and the cite for it is 495 U.S. 552 at

15   558.  And this is the quote (reading):

16           "Section 101(11) of the Bankruptcy Code defines

17       'debt' as a liability on a claim.  This definition reveals

18       Congress' intent that the meanings of 'debt' and 'claim'

19       be co-extensive."

20       So this distinction that plaintiff's counsel seeks to draw

21   between a debt and a claim, frankly, Your Honor, is illusory

22   and doesn't exist in the statute or in the case law.

23       Whether it's defined as a debt or a claim, though, I think

24   ultimately is immaterial.  The question is whether or not a

25   confirmed Chapter 13 plan prior to discharge modifies the debt

1    or claim, however you refer to it.   It essentially extinguishes

2    the debt or claim, replaces it, and that smaller debt has to be

3    reported.

4         The cases in this district and the overwhelming weight of

5    authority throughout the country has said that, no, it does

6    not.   And, in fact, if you look a little bit farther into

7    Chapter 13 at the discharge provision, it says that *Upon*

8    *completion of the plan, the Court shall grant the debtor a*

9    *discharge from his debts.*

10        Now, if the debts were extinguished and replaced with the

11   smaller debts which had just been paid off pursuant to the

12   plan, there would be nothing to discharge; and, again, if the

13   debts were only judgment debts, as plaintiff's counsel says,

14   then the discharge wouldn't apply in the vast majority of cases

15   because that's not what you're normally dealing with.

16        So I think when you read -- when you read the Chapter 13

17   of the Bankruptcy Code, it's perfectly consistent with what the

18   overwhelming weight of authority in this district has held.

19        A couple other very quick points.   Plaintiff's counsel

20   said that this issue has only come up recently after his briefs

21   were in based on the holdings in *Devincenzi* and *Jaras*.   I'm

22   probably pronouncing that wrong.   Those holdings simply

23   repeated the holdings of prior cases which dismissed

24   substantially identical complaints that were filed by

25   plaintiff's counsel asserting the same claim on behalf of other

plaintiffs, including the *Blakeney* case, the *Biggs* case, the *Atkins* case, the *Mestayer* case, and there are a few others that are cited in our brief.  So the notion that this is a new issue that has only recently come up I don't think holds water.

*In Re Elliott*, plaintiff's counsel says that Judge Koh's decision was based entirely on that case.  I don't think that that's right.  If you look at her decision, she cites that case once as the second case in a parenthetical, and that's the only discussion of it; but her discussion of the case, her citation is correct, which is that a Chapter 13 -- a confirmed Chapter 13 plan modifies how a debt is to be discharged.  It does not modify the underlying debt.  It's the discharge order at the end of the proceeding which modifies the underlying debt.

And I think on Your Honor's point about *Twombly* and the pleading issue, there are many problems in this pleading, and I think it could be dismissed solely on that basis.

In the interest of efficiency, I think it makes sense to address the underlying legal defects.  We have approximately 170 of these substantially identical claims.  They suffer from fundamental legal defects, including the ones I've just discussed; and to go through another round of pleading and another round of motions to dismiss where the fundamental defect remains I don't think is in anyone's interest.

And then the final point I'll make is we raised an

1  argument in our briefs, which hasn't been reached because

2  courts have found it unnecessary finding that the claims fail

3  on other grounds, but that's that there's no remedy here.

4      Injunctive relief is not available under the Fair Credit

5  Reporting Act.  There is no pled actual damages.  The only

6  damages are the costs of disputing the credit report in the

7  first place, which, of course, you don't have an obligation to

8  reinvestigate until a dispute has been made; and there are a

9  number of cases which we cite, and they don't refute, which

10  hold that prelitigation dispute costs and prelitigation

11  attorney's fees are not recoverable.

12      So the only other remedy they could possibly have is for

13  statutory damages.  In order to recover that, you need a

14  willful violation, which is analogous to the standard for

15  qualified immunity where you have to have clearly established

16  law.

17      Here, not only is the conduct not contrary to clearly

18  established law, it's been endorsed by the unanimous decisions

19  in this -- by about six or seven unanimous decisions within

20  this district and several out of it.

21      So that's another issue that simply cannot be pled around

22  and I think warrants dismissal with prejudice.

23      Thank you.

24          THE COURT:  All right.  With regard to the legal

25  question, I noticed in one of Judge Koh's opinions, *Doster*,

1  that the Court addressed the question of whether reporting a

2  delinquent debt during the pendency of a bankruptcy was

3  inaccurate or misleading, found as a matter of law it wasn't,

4  and granted the motion to dismiss with prejudice as to that

5  theory but suggested that failing to mention the bankruptcy in

6  itself could be a factual predicate for a claim.

7       What's your take on that, whether that second theory is

8  alleged here and is potentially legally viable?

9            MR. WALLACH:  The theory is not alleged here,

10  Your Honor.  I'm looking at the complaint right now.  The

11  operative paragraph is paragraph 99.  It says that it was

12  reporting with a balance of a past due amount despite the terms

13  of the Chapter 13 plan, and then recites some parts of the plan

14  and says that it should have been reporting as zero.  It

15  doesn't say anything about the fact of the bankruptcy not

16  having been mentioned.

17            THE COURT:  What about paragraphs 93 and 95 which do?

18            MR. GALE:  Your Honor, if I can --

19            MR. WALLACH:  Paragraphs 93 and 95 --

20            THE COURT:  No cross-talk.

21       Are you conceding the argument?

22            MR. GALE:  Yes.

23            THE COURT:  Okay.  All right.

24            MR. GALE:  That's not -- that's not the issue in this

25  case.

1          THE COURT:  All right.  Fair enough.

2          MR. GALE:  I would like to respond to a few of the --

3  just real quick a few of the comments made.

4          THE COURT:  I'll let you respond briefly.

5          MR. GALE:  There was an assertion that I

6  misrepresented sort of the timing of these cases and that --

7  *Blakeney*, *Atkins*, and *Biggs* -- respectfully, not one of those

8  cases cites to *Elliott* as far as I can recall.  So I do think

9  what I am saying does hold water in the sense that I have not

10 had a chance to brief *Elliott*.  Well, not in this particular

11 case.

12         The second thing that I would -- I concede that I am

13 losing these motions to dismiss, but every order that has been

14 written thus far is void -- there is no analysis of 1322.  I

15 have -- if you read Judge Davila's orders in *Atkins* and *Biggs*

16 and recently I think yesterday *Artus*, there is discussion of

17 1327; but as debtors' counsel, 1322 says that you can modify a

18 claim and that modification happens at confirmation.

19         There have been 70 motions to dismiss filed.  I don't

20 think it's a coincidence that in every single one of those

21 motions there's no -- we're talking about 1322 in our

22 oppositions.  It's just not briefed.

23         And to the extent that an allegation has been made that no

24 court anywhere has ever found any truth into our allegations,

25 the court in *Luedtke*, which is a Bankruptcy Court case, found a

1   violation of the confirmation order for a data furnisher to

2   report a car loan under the terms of the original contract.

3   Ironically in that particular order, the judge specifically

4   says what the debtor ought to have done was pursue a Fair

5   Credit Reporting Act cause of action.

6       Opposing counsel is now going to talk to you about *In Re*

7   *Jones*, which is another bankruptcy case, where a similar issue

8   was brought up, and in that particular case the judge said, *You*

9   *know what?  It sounds like to me you want your credit report to*

10  *reflect a bankruptcy discharge before your case is actually*

11  *discharged*.  In that particular case there was no past due

12  balance being reported.  It was a balance and the debtor wanted

13  the balance to be reported zero.

14      We are not asking in these cases if the plan is proposing

15  to pay, it would be inaccurate to report a zero balance.

16  That's not our position.  Our position is if you file a proof

17  of claim and 1322 says I can modify it, your claim is your cap;

18  and if I've modified it, because confirmation is a final order,

19  until there is a subsequent final order -- whether it's

20  dismissal, conversion, or discharge -- at that present time you

21  are not entitled -- in my example, the $10,000 -- you're not

22  entitled to $10,000, period.  You can't enforce the original

23  contract.

24      The mountain of case law in the Ninth Circuit backs my

25  assertion up.  You can't collect on it.  The only way that you

1    can get paid is through the plan; and if the plan says you get

2    X and you're reporting Y, facially our position is it's

3    inaccurate.

4        That's all.

5          **THE COURT:**  All right.  So I understand your position,

6    and I saw the cite to the bankruptcy cases in the papers.  I

7    will consider those.

8        I don't have any other questions for you-all.

9         **MR. WALLACH:**  Can I make one comment in response?  It

10   will be very quick, I promise.  Less than a minute.

11         **THE COURT:**  Very quick.

12         **MR. WALLACH:**  Because plaintiff's counsel said 1322

13   wasn't addressed, 1322 just doesn't resolve this issue.  He's

14   referring to 1322(b)(2).  What that says is that a Chapter 13

15   bankruptcy plan can, quote, *modify the rights of holders of*

16   *claims.*

17       There's no dispute that a plan modifies the rights of

18   holders.  It imposes an automatic stay; and if the plan is

19   executed and completed, then it discharges those holders'

20   debts.  It modifies their rights.  It just doesn't go to the

21   question at issue here, which is whether the underlying debt is

22   extinguished by the confirmed plan or if it's only extinguished

23   at discharge.

24         **THE COURT:**  All right.  Understood.  I'll take it

25   under submission.

1  **MR. WALLACH:**  Thank you, Your Honor.

2  **MR. GALE:**  Thank you, Your Honor.

3  (Proceedings adjourned at 2:34 p.m.)

4  ---oOo---

5

6

7  <u>**CERTIFICATE OF REPORTER**</u>

8  I certify that the foregoing is a correct transcript

9  from the record of proceedings in the above-entitled matter.

10

11  DATE:  Friday, April 14, 2017

12

13

14

15  _____

16  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
          U.S. Court Reporter

17

18

19

20

21

22

23

24

25